INDEPENDENT INSULATING GLASS/SOUTHWEST, INC. and Independent Insulating Glass Co., Relators,

v.

The Honorable Judge John STREET, Respondent.

No. 2-86-256-CV.

Court of Appeals of Texas, Fort Worth.

Jan. 9, 1987.

Jeffery H. Shore, Dallas, for relators.

Brown, Herman, Scott, Dean & Miles, and Stephen C. Howell, Fort Worth, for respondent.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

KELTNER, Justice.

The issue in this mandamus proceeding is whether the trial court erred in allowing discovery into past warranty claims and complaints received by the relators, the names and addresses of buildings in which the relators' glass is installed, a list of customers of the relators and the text of past warranties given to other customers. The relators claim that this discovery is not calculated to lead to admissible evidence and is unduly burdensome and harassing. We granted leave to file the petition for a writ of mandamus, but we now deny the writ of mandamus.

This is a case brought by River Plaza Ltd. against relators on grounds of breach of express and implied warranty, negligence in the design and manufacture of glass window units and numerous violations of the Texas Deceptive Trade Practices Act.

It is well settled that a writ of mandamus will not issue unless the trial judge clearly abuses his discretion. *Barker v. Dunham*, 551 S.W.2d 41, 42–43 (Tex.1977). Additionally, the party attempting to exclude documents and records from discovery has the affirmative duty to specifically plead and prove the particular privilege or immunity. *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex.1985); *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 50, 52 (Tex.App.—San Antonio 1986). In the instant case, our review of the record demonstrates that there was no abuse of discretion and that the relators failed to prove an immunity from discovery.

The history of relators' response to discovery in this case reads like a mystery novel. The plaintiff, River Plaza, Ltd., joined relators as defendants to other defendants, already parties to the suit, when glass windows in the River Plaza office building began to fail causing severe water damage. The relators are Independent Insulating Glass/Southwest, Inc. (hereinafter referred to as "Southwest"), and Independent Insulating Glass Co. (hereinafter referred to as "Independent Glass"). Southwest, a regional subsidiary of Independent Glass, manufactured the insulating double-pane glass units that were used in the windows of River Plaza's building. River Plaza sued both Independent Glass and Southwest, claiming that the window units were negligently designed and manufactured. Additionally, River Plaza claims that both relators breached expressed and implied warranties regarding the window units and also brought suit under the Texas Deceptive Trade Practices Act, alleging violations of subsections 5, 7, 12, 19, 20, 21 and 23 of TEX.BUS. & COM.CODE ANN. art. 17.46(b) (Vernon Supp.1986).

River Plaza served interrogatories and production requests to both relators on May 23, 1986. As a result, the answers and responses were due by June 24, 1986. During the interim period, relators filed no objections or answers to the interrogatories and production requests. River Plaza reminded the relators that discovery was overdue by a letter dated July 9, 1986. On July 17, relators' attorney responded that his clients needed an additional two weeks to prepare the answers to interrogatories and gather the documents requested. This conversation was confirmed by letter. However, two weeks passed without responses or objections being filed. On August 4, counsel for relators contacted River Plaza's attorney, stating that he was in trial and that the delay had been caused in part by representatives of Insulating Glass in Chicago. He asked for and was given until August 14 to answer the interrogatories, produce the discovery and to produce documents. However, no answers, responses or objections were filed.

On August 27, 1986, River Plaza's attorney telephoned the relators' counsel. During that conference, counsel for relators stated that some of the answers were in

draft and some of the documents had been reviewed. However, all of the documents required by the motion for production had not been gathered. For the first time, relators' counsel stated that his clients intended to avoid answering many of the interrogatories and request for productions because they inquired into "insulating glass window units" and not "insulating glass units." Evidently, it was relators' position that they manufactured and designed "glass units" and not "window units." At that point, an argument ensued between counsel and the relators' attorney agreed that he would fully answer all discovery. Another telephone conversation on September 4, 1986, revealed that while some answers were still in draft, not all of the documents to be produced had been gathered.

On September 15, River Plaza filed a "Motion to Compel Answers to Interrogatories and Production of Documents and for Appropriate Sanctions...." Sometime after September 15, the relators filed "Motions for Protective Orders" for the first time alleging that much of the material requested was immaterial and irrelevant and would be unduly burdensome and expensive to produce. Additionally, relators claim that the discovery was harassing and inquired into "trade secrets." Soon thereafter, responses were filed objecting to a number of the interrogatories and requests.

The discovery requested can be segregated into four areas. First, River Plaza sought all complaints and warranty claims regarding relators' products since January 1, 1975. Second, River Plaza sought the text of all warranties during this time period. Third, River Plaza sought names and addresses of all relators' customers since January 1, 1975. Fourth, River Plaza sought the name and location of all buildings in which relators' products had been installed since January 1, 1975.

The Honorable John Street, trial judge, held a hearing on the motion to compel and motion for protective order, spending a considerable amount of time listening to arguments of counsel. However, there was no record made of this hearing and relators have not produced any evidence of the burden that they claim the requested discovery would work on them. Additionally, no example of the types of papers that relators' counsel claims his clients would have to go through to produce the requested discovery was introduced. Thereafter, on October 28, the trial court ordered that discovery would be allowed only into complaints and warranty claims of Southwest's customers, the identity and address of Southwest's customers, the buildings in which Southwest's products have been installed since January 1, 1975, and the text of all express warranties made by Southwest since January 1, 1975. Judge Street denied similar discovery into information of Insulating Glass's product. The court ordered that the interrogatories and request for productions be answered by November 7, 1986.

On November 4, the relators filed a motion for rehearing, which was denied by court's letter of November 11, 1986. Relators have failed to answer and produce the discovery. The writ of mandamus was filed in this court on December 1, 1986.

In oral argument on December 10, relators conceded that complaints and warranty claims made prior to the manufacture of the windows in the instant case are discoverable on the issue of "knowledge" in the Deceptive Trade Practices Act claim. However, relators' counsel admitted that he had not viewed any complaints or warranty claims and did not even know if any existed. Those documents have not been produced.

At the outset, we must decide whether relators waived any objections they might have by failing to object to the interrogatories and production requests within thirty days allowed by the rules. TEX.R.CIV.P. 167(2); 168(4), (6). Both rule 167 (production request) and 168 (interrogatories), state that a party may serve written objections within thirty days after discovery requests are issued. We are unable to find any case in Texas which holds that an

objection is waived if not made within this thirty day period.

However, the federal experience in this area is instructive. FED.R.CIV.P. 33(a) contains a similar time limitation for filing of answers and objections to requested interrogatories. Ample authority exists in the federal system for the proposition that any objections not timely made are waived. *Dollar v. Long Mfg., N.C., Inc.* 561 F.2d 613 (5th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85; *Kansas-Nebraska Natural Gas v. Marathon Oil Co.,* 109 F.R.D. 12, 24 (D.Neb.1985); *Davis v. Romney,* 53 F.R.D. 247, 248 (Penn.1971); *Bohlin v. Brass Rail,* 20 F.R.D. 224, 225 (S.D.N.Y.1957); *cf.* 4A MOORE'S FEDERAL PRACTICE sec. 33.27 (2d ed. 1984). In the *Bohlin* case, the court was asked to decide the specific question presented here. In reviewing FED.R.CIV.P. 33(a) (Interrogatories), that court reviewed the rule's admonition of when objections should be filed and stated:

> Nevertheless, if the provisions of Rule 33 relating to the service of objections are to be given any effect or meaning, the failure to serve such objections within the time prescribed by the rule should be considered as a waiver of such objections.

*Bohlin v. Brass Rail,* 20 F.R.D. at 225.

At least three prominent Texas authors have reached the same conclusion. Sales, *Pretrial Discovery in Texas Under the Amended Rules: Analysis and Commentary,* 27 S.TEX.L.REV. 305, 360 (1986); Pope & McConnico, *Practicing Law With the 1981 Texas Rules,* 32 BAYLOR L.REV. 456, 479 (1980).

■ As a result, we hold that objections to rules 167 and 168 discovery requests served after the expiration of thirty days are waived unless an extension of time has been obtained from the trial court or good cause is shown for the failure to object within thirty days. In the instant case, no objections or motions for protective orders were filed until almost four months after the discovery requests were made. Relators do not try to justify their delay in filing objections. As a result, we cannot hold that the trial court abused its discretion in overruling the relators' motions for protective orders.

Furthermore, the relators have not carried their burden of proving that the discovery is unduly burdensome and harassing. *See Peeples,* 701 S.W.2d at 637; *Weisel Enterprises, Inc.,* 718 S.W.2d at 58. In their motions for protective orders, relators argued that a review of some of the records indicated that they were not computerized and organized and that substantial employee time would be required to comply with the interrogatories and production request. Relators' motion also requests reimbursement from River Plaza for complying with the discovery request. However, no evidence was presented to the trial court about the work necessary to comply with the discovery requests.

■ Any party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome, costly or harassing to produce, has the affirmative duty to plead and prove the work necessary to comply with discovery. Otherwise, the trial court cannot make an informed judgment on whether to limit discovery on this basis or place the cost for complying with the discovery. Failure to follow this procedure constitutes a waiver of any complaint of the trial court's action. In reaching this holding, we are extending the ruling made by the Supreme Court in the *Peeples* case. *Peeples* did not deal with allegations of unduly burdensome, costly or harassing discovery. However, the rationale of the *Peeples* opinion applies to the instant case. Any party seeking to limit discovery has the burden of pleading and proving that contention. As a result, we cannot hold that the trial court abused its discretion in refusing to grant relators' motions for protective orders on the basis that the discovery was unduly burdensome, costly or harassing.

■ Additionally, relators complain that they manufacture a broad range of glass units and that discovery should be limited

to similar windows. The glass units that are the subject of this lawsuit are custom made and as a result, a request for information of similar windows might unduly restrict discovery to only windows made for River Plaza. The relators did not introduce any evidence of the various types of windows they manufacture and whether the other windows are so dissimilar as to make discovery unnecessary. As a result, the trial court did not abuse its discretion in failing to limit discovery.

In any event, we cannot hold that the discovery requested is not reasonably calculated to lead to admissible evidence. The cause of action brought by River Plaza is unique and is further complicated by the relators' claims that: the window units failed because of faulty installation; the terms of the limited warranty had been violated; the relators considered their warranty "void" because of actions of another defendant; and the building was improperly constructed.

■■■■ The relators claim that the requested items are not relevant to any matter in the lawsuit. Obviously, relevance is not the test in discovery. The trial judge is under a duty to determine whether the requested discovery was "reasonably calculated to lead to the discovery of admissible evidence." TEX.R.CIV.P. 166b. In making the determination whether discovery will lead to admissible evidence, we must keep in mind that the ultimate purpose of discovery is to seek the truth so that lawsuits are decided by what the true facts reveal and not what facts are concealed. *West v. Solito*, 563 S.W.2d 240 (Tex.1978); *Gordon v. Blackmon*, 675 S.W.2d 790, 793 (Tex.App.—Corpus Christi 1984, no writ). However, whether a request for discovery will lead to admissible evidence is often a guessing game. The courts of Texas have developed a balancing test for determining the potential "relevance" of discovery requests. In this test, the probative value of the information sought and the burden on River Plaza if discovery is denied, is weighed against the burden placed upon relators if the discovery is granted. *Gor-*

*don*, 675 S.W.2d at 793. In applying this test to the requested discovery, we find that the scales tip in favor of River Plaza.

■■■■ River Plaza has specifically alleged that the double insulating glass units furnished by the relators are defective and were negligently designed and manufactured. River Plaza also alleged that delivery of defective windows breached both implied and express warranties and constituted violation of the Texas Deceptive Trade Practices Act. The performance in the field of other windows manufactured at the same Dallas facility was certainly relevant to the issue of defect in design and manufacture, and discovery of this fact is reasonably calculated to lead to discovery of admissible evidence. Furthermore, the discovery of customers and buildings in which relators' glass has been installed, would also lead to evidence of how similarly constructed windows have performed, and therefore, weigh on the issue of negligent manufacture and design.

Additionally, the Deceptive Trade Practices Act allows increased damages if River Plaza proves that the relators knew of problems with the windows and misrepresented them. As a result, the relators' knowledge of complaints and warranty claims prior to the sale of these window units is relevant to the cause of action alleged by the plaintiff.

River Plaza alleges in its petition that relators represented that the warranty inferred rights which it does not, in fact, contain. *See Watson v. Bettinger*, 658 S.W.2d 756, 759 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). This alleges a violation of subsection 19 of the Texas Deceptive Trade Practices Act. As a result, the text of warranties given to other companies, would be relevant to discover the course of conduct on the part of the relators and whether such representation was knowingly made. In considering the potential evidence that could be developed by the requested discovery, it is obvious that the discovery requests are "reasonably calculated to lead to the discovery of admissible evidence." TEX.R.CIV.P. 166b. When ap-

plying the balancing test, it is obvious that the burden on River Plaza in denying discovery is larger than the burden on the relators to produce the discovery.

It is also interesting to note River Plaza produced evidence that the relators advertised that much of the information they would protect from discovery is available to potential customers. In an advertising brochure, the relators state:

We take what we hope is pardonable pride in our contribution to the success of the seventeen major buildings depicted in this brochure. Architects and clients with varied objectives have carefully examined the merits of competing suppliers and have selected Inde-Pane for the best balance of high quality, reliable service and competitive pricing. *Additional data on any specific building, or on any related sealed insulating glass problem, is readily available by phoning any of our factories detailed on the back cover. We invite you to let our extensive experience go to work for you!* [Emphasis added.]

After considering all points raised by the relators, we are of the opinion that the trial court did not abuse its discretion in granting the requested discovery for a multitude of reasons. As a result, the writ of mandamus is denied.